IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTONIO BRAND, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 16-cv-03432 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| CALIBER HOME LOANS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Caliber Home Loans, Inc. ("Caliber") became the servicer of Plaintiffs Antonio and Consuelo Brand's mortgage loan after the loan debt was discharged in bankruptcy proceedings. The bankruptcy discharge meant that Caliber could not pursue collection on the loan from Plaintiffs. Nonetheless, Caliber made several communications with Plaintiffs that they allege violated provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/1 *et seq.* Plaintiffs have brought several claims under those statutes, and Caliber now moves for partial summary judgment. (Dkt. No. 44.) For the following reasons, the Court grants Caliber's motion.

BACKGROUND

Plaintiffs were the mortgagors of a secured home mortgage serviced by Caliber. (Pls.' Resp. to Defs.' L.R. 56.1 Statement of Material Facts ("PRSMF") ¶ 1, Dkt. No. 55.) Their mortgage was formerly owned by Defendant LSF9 Master Participation Trust[1] ("LSF9"). (*Id.*

---

[1] The parties dispute whether LSF9 is a Defendant in this action. In its Statement of Uncontested Facts, Caliber states that LSF9 has not been served and has not appeared in this case. (Def.'s Statement of Uncontested Facts ("SUF") ¶ 3, Dkt. No. 46.) Plaintiffs dispute this fact and state that LSF9 was issued a summons in this matter. (PRSMF ¶ 3.) Indeed, the docket reflects that a summons was issued on LSF9. But the docket does not show that the summons was served, and LSF9 has neither entered an appearance nor answered the amended complaint.

¶ 3.) On February 3, 2015, Plaintiffs' mortgage was discharged in a Chapter 7 bankruptcy. (*Id.* ¶ 5.) Following the bankruptcy discharge, Caliber became the new servicer for Plaintiffs' mortgage. (*Id.* ¶ 6.)

Caliber first made contact with Plaintiffs in a December 16, 2015 Welcome Letter. (*Id.* ¶ 7.) The Welcome Letter advises Plaintiffs that Caliber was their new mortgage servicer. (*Id.*) In addition, on its first page and prior to the substantive portion on the second page, the letter contains following bankruptcy disclosure:

### *** IMPORTANT MESSAGE ***

> If you filed a Bankruptcy petition and there is either an "automatic stay" in effect, or you received a discharge from the Bankruptcy Court of your personal liability: (i) Caliber will not pursue collection on your mortgage loan from you personally; (ii) this notice is for informational purposes only and is not intended as a demand for payment from you personally; (iii) unless the Bankruptcy Court has ordered otherwise, Caliber continues to retain whatever rights it holds in the property that secures the loan, despite your bankruptcy filing; and (iv) this correspondence does not constitute a "reaffirmation" agreement as that term is defined in the U.S. Bankruptcy Code, 11 U.S.C. § 524(C). . . .

(*Id.*; Def.'s Statement of Uncontested Facts ("SUF"), Ex. D, Dkt. No. 46-4.) Five days later, Caliber sent Plaintiffs a Debt Validation Letter to inform them that LSF9 was the creditor of their loan and their total debt was $89,454.29. (PRSMF ¶ 8; SUF, Ex. F, Dkt. No. 46-6.) The Debt Validation Letter contains a bankruptcy disclosure identical to the one in the Welcome Letter. (PRSMF ¶ 8.)

Shortly thereafter, Caliber began making telephone calls to Plaintiffs. The first call occurred in mid-December. (*Id.* ¶ 9.) A Spanish-speaking Caliber representative spoke with Antonio Brand and discussed foreclosure alternatives. (*Id.* ¶ 10.) At no point during the call did the representative demand that Plaintiffs repay the discharged loan. (*Id.*) Between January 9, 2016 and March 9, 2016, Caliber called Plaintiffs twelve more times. (*Id.* ¶ 11.) Eight of those calls are

at issue in this action (although not the subject of this motion for partial summary judgment). (*Id.*) No Caliber representative ever demanded payment from Plaintiffs on the discharged loan or otherwise suggested Plaintiffs owed money on the loan during these calls. (*Id.* ¶ 12.)[2]

In a letter dated February 17, 2016, Caliber formally notified Plaintiffs that they were in default on their mortgage ("Notice of Default"). (*Id.* ¶ 13; SUF, Ex. J, Dkt. No. 46-10.) The Notice of Default begins by stating that Plaintiffs are "in default under the terms of the documents creating and securing your Loan . . . for failure to pay amounts due." (SUF, Ex. J.) In the next paragraph, the notice states that:

> You have a right to cure your default. To cure the default, you must pay the full amount of the default on this loan by 3/23/2016 . . . . Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding where applicable, and sale of the property.

(PRSMF ¶ 13; SUF, Ex. J.) The letter next lists the amounts that Plaintiffs owed on the mortgage and instructs them on how to cure the default and how to dispute the default. (SUF, Ex. J.) In the next paragraph, the letter states that, "[i]f foreclosure proceedings are undertaken, we may pursue a deficiency judgment, if permitted by applicable law." (*Id.*) Near the bottom of the second page of the letter, in normal typeface, there is a paragraph advising Plaintiffs of their rights. (*Id.*) Two sentences into that paragraph, on the third line, the notice discloses the following:

> To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation.

(PRSMF ¶ 13; SUF, Ex. J.) The next paragraph on the same page is in bold typeface and begins by stating that "**Caliber Home Loans, Inc. is attempting to collect a debt, and any**

---

[2] Plaintiffs dispute this fact. But they neither explain why nor point to countervailing evidence. The Court has reviewed the transcripts of the calls at issue (*see* SUF, Ex. I, Dkt. No. 46-9) and finds that the evidence provides no basis for Plaintiffs to dispute the fact.

**information obtained will be used for that purpose.**" (SUF, Ex. J.) On the next page, in normal typeface, the letter goes on to state: "You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies." (*Id.*)

Plaintiffs' attorney, Salvador Lopez, sent Caliber a letter around March 11, 2016 in which he informed Caliber that he represented Plaintiffs in connection with their mortgage and advised Caliber no longer to communicate directly with Plaintiffs regarding any debt. (PRSMF ¶ 14.) After receiving the summons and complaint for the present action, Caliber noted that Plaintiffs were represented by Community Lawyers Group, Ltd. rather than Lopez. (*Id.* ¶ 15.) Caliber updated its records to account for this change in representation. (*Id.*) As a result, Caliber sent four letters dated March 30, 2016. (*Id.*) Two letters were sent directly to Plaintiffs' home address. (*Id.*) One letter (the "Attorney Letter") begins by acknowledging Caliber's receipt of verbal or written communication notifying Caliber that Plaintiffs were no longer represented by an attorney. (*Id.*; SUF, Ex. K, Dkt. No. 46-11.) The following paragraph is included in the Attorney Letter with an underlined typeface: "<u>In accordance with the Federal Fair Debt Collection Practices Act, please be advised that all collections and account correspondence regarding the above-referenced account will now resume.</u>" (SUF, Ex. K.) In the next paragraph, in normal typeface, the letter provides Plaintiffs with a number to contact in the event they believe the notice to have been sent in error. *Id.* Below the valediction, in all caps and bold typeface, the letter informs Plaintiffs that "**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**" (*Id.*) Then, in a separate paragraph and normal typeface, the letter concludes with this bankruptcy disclosure:

> Notice to Consumers presently in Bankruptcy or who have a Bankruptcy
> Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy

> Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.

(PRSMF ¶ 15; SUF, Ex. K.)

The second letter to Plaintiffs informs them that Caliber acknowledged receipt of their written request to cease further communications regarding the mortgage loan. (PRSMF ¶ 15; SUF, Ex. K.) Then, in underline typeface, it states:

> <u>In accordance with the Federal Fair Debt Collection Practices Act, please be advised that you will no longer receive any correspondence, except to the extent that such communications are permitted or required by applicable law. Caliber may, however, continue to pursue any and all remedies afforded it under the terms of your account.</u>

(SUF, Ex. K.) Immediately preceding the valediction is the same bold and all-caps notice regarding the letter being an attempt by a debt collector to collect a debt that appeared in the Attorney Letter and the same normal-typeface bankruptcy disclosure. (PRSMF ¶ 15; SUF, Ex. K.) Plaintiffs claim that they never received this second letter. (PRSUMF ¶ 15.)

Plaintiffs claim to suffer from emotional distress because of Caliber's calls and letters. Together, they completed and executed a form affidavit listing sixteen indicators of emotional distress. Plaintiffs circled "YES" for fourteen of those indicators, including: fear of answering the telephone, fear of answering the door, feelings of hopelessness, negative impact on job, and negative impact on relationships. (PRSMF ¶ 16; SUF, Ex. L, Dkt. No. 46-12.) They also wrote that "[w]ith these [sic] stress, I have to stop working, I can't concentrate, headaches, feeling worthless," although neither of them was working at the time Caliber began contacting them. (PRSMF ¶ 16.) In deposition testimony, Plaintiffs also claimed that Caliber's actions caused them to suffer feelings of nervousness, sleeplessness, panic attacks, embarrassment, depression, weight loss, and fears of police coming to their door. (Def.'s Resp. to Pls.' Statement of Additional Facts

¶¶ 18–22, Dkt. No. 60.) Consuelo Brand testified that her children "had knowledge of the stress that she suffered, the intimidation that she felt, her fear of opening the door, and her lack of sleep." (*Id.* ¶ 24.) Further, she stated that she told her doctor of her stress and headaches. (*Id.* ¶ 25.)

## DISCUSSION

When bringing a motion for summary judgment, "with the court drawing all inferences in the light most favorable to the non-moving party, the moving party must discharge its burden of showing that there are no genuine questions of material fact and that [it] is entitled to judgment as a matter of law." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). If the moving party carries its burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Id.* Here, Caliber moves for partial summary judgment on Plaintiffs' FDCPA claims arising out of the letters, their ICCA claims, and their request for emotional distress damages.

### I. FDCPA § 1692g Claim

In their amended complaint, Plaintiffs allege that the Notice of Default violated FDCPA § 1692g(a) by failing to identify the creditor of the mortgage loan. Section 1692g(a) requires a debt collector, within five days of initially contacting a consumer in connection with the collection of any debt, to send a written notice containing, among other things, "the name of the creditor to whom the debt is owed," unless that information was in the initial communication. 15 U.S.C. § 1692g(a). According to Plaintiffs, the Notice of Default was Caliber's initial communication with them and Caliber did not send a follow-up letter within five days identifying the creditor.

In support of its summary judgment motion, however, Caliber has come forward with two letters that were sent to Plaintiffs before the Notice of Default but were not identified in the amended complaint: the Welcome Letter and the Debt Validation Letter. In fact, Caliber's initial communication with Plaintiffs was the Welcome Letter. Then five days later, Caliber sent the Debt Validation Letter that identified LS9 as the creditor. Thus, there was no violation of § 1692g(a).

In their opposition to Caliber's motion, Plaintiffs appear to acknowledge that the Welcome Letter and the Debt Validation letter negate their original claim of a § 1692g(a) violation. But they raise a new argument—that the Debt Validation Letter ran afoul of § 1692g(a) and the ICCA because it failed to state adequately the current amount of the debt owed by Plaintiffs. *See* 15 U.S.C. § 1692g(a)(1) (requiring the initial communication or follow up written notice to state the amount of the debt). Specifically, the Debt Validation Letter stated that Plaintiffs' total debt was $89,424.29, with the caveat that the letter was not a payoff statement and Plaintiffs may owe additional amounts on the loan in the form of interest, late charges, servicing fees, and other charges. In their reply brief, Caliber argues that any such claim must be dismissed because it was raised for the first time at the summary judgment stage.

The Seventh Circuit gives district courts discretion to refuse to consider claims raised for the first time in connection with summary judgment when those claims change the complaint's factual theory. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017). Here, Plaintiffs' new claim does change the factual theory of the § 1692g(a) claim from what was alleged in the amended complaint, as it is based on an entirely different letter. Indeed, the Debt Validation Letter was not even mentioned in Plaintiffs' amended complaint. Rather, it was

introduced for the first time in Caliber's Statement of Uncontested Facts. Therefore, the Court finds that Plaintiffs have forfeited their new theory of a § 1692g(a) violation.[3]

## II. FDCPA § 1692c Claim

Plaintiffs next claim that the Attorney Letter from Caliber violated FDCPA § 1692c(a)(2), which bars a debt collector from communicating with a consumer in connection with the collection of any debt when the collector knows that the consumer is represented by an attorney. Defendants contend that the Attorney Letter did not violate § 1692c(a)(2) because it was not a communication in connection with the collection of a debt.

There is no bright-line rule in the Seventh Circuit for determining when a communication is made in connection with the collection of a debt. *See Gburek v. Litton Loan Servicing, LLP*, 614 F.3d 380, 385 (7th Cir. 2010). Not all communications between a debtor and a debt collector are in connection with the collection of a debt, and not even an explicit demand for payment, standing alone, is sufficient. *Id.* at 384–85. The inquiry is an objective one, and it is not evaluated by the normal unsophisticated consumer standard employed for most FDCPA claims. *Ruth v. Triumph P'ships*, 577 F.3d 790, 798 (7th Cir. 2009). Factors to be considered in determining whether a communication is in connection with the collection of a debt include: whether there has been a demand for payment, the nature of the parties' relationship, and the purpose and context of the communications. *Gburek*, 614 F.3d at 385.

Here, a consideration of the *Gburek* factors makes clear that the Attorney Letter was not made in connection with the collection of a debt. First, the Attorney Letter contained no demand

---

[3] The Court further notes that Plaintiffs' argument that the Debt Validation Letter stated an incorrect amount of debt owed because it did not include additional fees is supported only by Second Circuit case law that is not binding here. By contrast, the Seventh Circuit found that a similar letter listing the principal, interest, fees, and total due as of a given date, and containing similar language directing borrowers to call for a final payout amount, did clearly state the total amount of the debt and thus did not violate § 1692g(a). *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 679–80 (7h Cir. 2007).

for payment. Instead, it simply informed Plaintiffs that Caliber had learned that Plaintiffs were no longer represented by an attorney. Nor can it be said that the Attorney Letter was sent "specifically to induce the debtor[s] to settle [their] debt." *Id.* at 385. While it did advise Plaintiffs that collection efforts on the mortgage would resume, the Attorney Letter itself made no attempt to collect on the debt. Moreover, it contained no threats of adverse consequences for failure to pay, provided no directions on how to pay, and did not even list the amounts owed on the discharged mortgage. *See Carlvin v. Ditech Fin. LLC*, 237 F. Supp. 3d 753, 761 (N.D. Ill. 2017) (finding that a notice's failure to make any reference to status of the debtor's account, ask the debtor to make a payment, or provide the outstanding balance on the alleged debt were factors demonstrating that a notice did not make a demand for payment).

On the other hand, the nature of the parties' relationship weighs slightly in favor of finding that the Attorney Letter was sent in connection with the collection of a debt. But Caliber's status as the loan servicer, alone, does not conclusively establish that it was attempting to collect a debt. Indeed, while "[o]ne common function of a loan servicer is to collect payments. . . . that is not the only function of a loan servicer, and it is not a function applicable to debts that have been discharged in bankruptcy." *Green v. Specialized Loan Servicing, LLC*, No. 15-cv-513-jdp, 2017 WL 213836, at *5 (W.D. Wis. Jan. 18, 2017). Here, Caliber had previously sent Plaintiffs a Notice of Default, which, as discussed below, could potentially be interpreted as an attempt to collect a debt. Still, that Notice of Default contained a bankruptcy disclosure—albeit, not as prominently placed as similar disclosures in the other letters at issue here—notifying Plaintiffs that the notice was for informational purposes only.

Finally, the context and purpose of the Attorney Letter weigh against finding that it was an attempt to collect a debt. The clear purpose of the letter was to notify Plaintiffs that Caliber had

become aware that Plaintiffs were no longer represented by an attorney and to advise them of the consequences of their ostensible lack of representation. Of course, Plaintiffs had merely changed lawyers and were represented, a fact Caliber acknowledged in the second letter to Plaintiffs. While Plaintiffs contend that they never received the second letter, the Attorney Letter provided Plaintiffs a telephone number and times to call in the event they believed the Attorney Letter had been sent to them in error. Thus, the Attorney Letter implicitly alerted Plaintiffs to the possibility it was sent by mistake. While the letter includes the bold and all caps statement, "**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE,**" that language is not dispositive. *Gburek*, 614 F.3d at 386 n.3 ("The letter bore a disclaimer identifying it as an attempt to collect a debt, but this does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance."). And of course, that language was immediately followed by the bankruptcy disclosure stating that for such borrowers the communication was not an attempt to collect a debt. *See Cardona v. FCI Lender Servs., Inc.*, No. 17 C 1278, 2017 WL 3531492, at *3 (N.D. Ill. Aug. 16, 2017) (addressing a similar bankruptcy disclosure and finding that the "only reasonable interpretation of the letter, even to an unsophisticated consumer, is that it was intended for informational purposes only, and not an attempt to collect a debt, when received by a person . . . whose debt has been discharged in bankruptcy").

Plaintiffs argue that the underlined notification that debt collection would resume on their account makes clear that the purpose of the Attorney Letter was to collect a debt. But they fail to make an argument on how that notification or any information elsewhere in the letter would undermine the bankruptcy disclosure and lead Plaintiffs to believe that it did not apply to them.

*See Whalen v. Specialized Loan Servicing, LLC*, 155 F. Supp. 3d 905, 911 (W.D. Wis. 2016) (granting motion to dismiss because there was "no language in the letter that would lead plaintiff to doubt that the bankruptcy disclaimer applied to her"). Taken together, these facts establish as a matter of law that the purpose of the Attorney Letter was not to collect a debt but rather to provide Plaintiffs with information regarding their change of attorney.

In sum, the *Gburek* factors weigh in favor of a finding that the Attorney Letter was not sent in collection with the connection of a debt. While the nature of the parties' relationship weighs slightly in Plaintiffs favor, the lack of a demand for payment and the purpose and context of the letter weigh more strongly in favor of Caliber. Therefore, the Court grants summary judgment in favor of Caliber as to the FDCPA § 1692c claim.

### III.  FDCPA § 1692e Claim

The final FDCPA claim asserted by Plaintiffs invokes § 1692e, which prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt. Specifically, Plaintiffs claim that the Notice of Default was false or misleading because it threatened to pursue a deficiency judgment and make certain communications with consumer reporting agencies—both actions it could not do because of the bankruptcy discharge. Plaintiffs' claim under § 1692e is evaluated under the unsophisticated consumer standard. Under that standard, where a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA even if it is technically false. *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645–46 (7th Cir. 2009). "The 'unsophisticated consumer' isn't a dimwit." *Id.* at 645. While he or she "may be uninformed, naïve, and trusting . . . [he or] she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Id.*

First, the Court finds that there were no technically false statements in the Notice of Default. The notice stated that Plaintiffs were in default, which they were. It further stated that a failure to cure the default could result in "foreclosure by judicial proceeding *where applicable*." (PRSMF ¶ 13; SUF, Ex. J (emphasis added).) Foreclosure by judicial proceeding was not applicable in Plaintiffs' case, so that representation was technically true. At another point, the Notice of Default states that if foreclosure proceedings were undertaken, Caliber "may pursue a deficiency judgment, *if permitted by applicable law*." (SUF, Ex. J (emphasis added).) Given the condition attached to that representation, it again is technically true. And the language stating that Caliber could report the default to credit reporting agencies is not necessarily false either. *See* 16 C.F.R. pt. 600, app'x 607(b)(6) ("A consumer report may include an account that was discharged in bankruptcy (as well as the bankruptcy itself), as long as it reports a zero balance due to reflect the fact that the consumer is no longer liable for the discharged debt."). The disclaimer hedges by stating that the default "may" be reported to credit reporting agencies, leaving leeway for Caliber not to report in certain instances—such as where the debt was discharged in bankruptcy.

Plaintiffs have a stronger claim that the Notice of Default is misleading. An unsophisticated consumer would have to read the first page-and-a-half of the letter before he or she even got to the bankruptcy disclosure. And the first part of the letter could lead such a consumer to believe that he or she had to repay the discharged debt. The letter gives the amount to cure the default, provides a payment schedule, and warns Plaintiffs of the consequences of their failure to make payment by a certain date. While the letter contains a bankruptcy disclosure, that disclosure is buried in a paragraph in the middle of page two of the notice that otherwise discusses issues unrelated to bankruptcy. In short, the Notice of Default has at least the potential to mislead.

12

The critical issue then becomes whether the debt-collection language in the letter is plainly, on its face, misleading or deceptive, or if instead the language, while not plainly misleading or deceptive, might nonetheless deceive the unsophisticated consumer. *Ruth*, 577 F.3d at 800. The Seventh Circuit has held that where the language is plainly misleading or deceptive a plaintiff need not present extrinsic evidence to prevail. *Id.* By contrast, if the communication's language only has the potential to mislead the unsophisticated consumer, then extrinsic evidence is necessary to defeat summary judgment. *Id.*; *see also Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 415 (7th Cir. 2005) ("[W]hen the letter itself does not plainly reveal it would be confusing to a significant fraction of the population, the plaintiff must come forward with evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial.") Among the extrinsic evidence that may be considered in connection with summary judgment are consumer surveys and expert testimony. *Ruth*, 577 F.3d at 800; *Durkin*, 406 F.3d at 415.

Plaintiffs submitted no extrinsic evidence establishing that the debt-collection language in the Notice of Default would mislead an unsophisticated consumer. Therefore, they can defeat summary judgment only by showing that the Notice of Default is plainly misleading or deceptive. *Lox v. CDA, Ltd.*, 689 F.2d 818, 822 (7th Cir. 2012) ("[S]ince [the plaintiff] did not present any extrinsic evidence at the summary judgment stage, he must show that the statement is plainly and clearly misleading on its face, thus eliminating any need for evidence of its deceptive nature.") Yet the Court cannot conclude that the Notice of Default is plainly misleading or deceptive due to the presence of the bankruptcy disclosure. Even an unsophisticated consumer is presumed to read collection notices with care, know that he or she is in bankruptcy, and understand that the disclosure applies to him or her. *See Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d

1057, 1060 (7th Cir. 2000) ("[O]ur uneducated debtor possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences."). It is certainly possible that such a consumer could miss this language or be confused by the idea that a notice seemingly demanding payment of a debt could be submitted for purely informational purposes. Under Seventh Circuit law, however, the misleading nature of such language would need to be demonstrated through extrinsic evidence. Because Plaintiffs have submitted no such evidence, they have not met their burden of creating a genuine dispute of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." (internal quotation marks omitted)). Consequently, the Court must grant summary judgment in favor of Caliber on the § 1692e claim.

### IV. Illinois Collection Agency Act Claims

According to Plaintiffs, Caliber also violated Section 9 of the ICAA, 225 ILCS 425/9, when it contacted Plaintiffs despite knowing that they were represented by counsel. For its part, Caliber asserts that it should be granted summary judgment on this state law claim because Section 9 of the ICAA supplies no private right of action.

The Illinois Supreme Court has never addressed whether Section 9 of the ICAA creates a private right of action. One Illinois Appellate Court decision, *Sherman v. Field Clinic*, 392 N.E.2d 154, 161 (Ill. App. Ct. 1979), has held that there was in fact an implied right of action for Section 9 claims. And several courts in this District have applied that decision in finding that the statute provides a private right of action. *E.g.*, *McLaughlin v. LVNV Funding, LLC*, 971 F. Supp. 2d 796,

800 (N.D. Ill. 2013); *Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F. Supp. 2d 929, 940 (N.D. Ill. 2012).

More recently, however, a court in this District undertook an in-depth analysis of this issue in *Eul v. Transworld Systems*, No. 15 C 7755, 2017 WL 1178537, at *16–19 (N.D. Ill. Mar. 30, 2017), and determined that there are persuasive indications that the Illinois Supreme Court would decide the issue differently. The *Eul* court pointed to the fact that *Sherman* was decided forty years ago, and no other "Illinois appellate decision before or since has found, applied, or even mentioned an implied private right of action under" Section 9. *Id.* at *17. Moreover, Illinois circuit courts have frequently declined to follow *Sherman* and instead have dismissed private actions seeking to enforce ICAA, including those based on Section 9. *Id.* at *17 & n.14 (listing cases).

Furthermore, Section 9 explicitly authorizes the Attorney General and the Department of Financial and Professional Regulation to enforce ICAA yet omits a private right of action. As the *Eul* court noted, recent Illinois Supreme Court cases have stated that "when a statute grants a state official broad authority to enforce the statute, it indicates the legislature's intent not to imply a private right of action for others to enforce the statute." *Id.* (quoting *Metzger v. DaRosa*, 805 N.E.2d 1165, 1172 (Ill. 2004)). Furthermore, there are different sections of the ICAA that do expressly provide a private right of action, suggesting the legislature's intent not to imply one for Section 9. *Id.* at *18. Finally, the Illinois Supreme Court, in dicta, has suggested that no private right of action exists to enforce the ICAA. *Id.* (citing *People ex rel. Daley v. Datacom Sys. Corp.*, 585 N.E.2d 51 (Ill. 1991)). *Eul* does recognize that nine years before *Datacom*, the Illinois Supreme Court favorably cited *Sherman* in *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 432 N.E.2d 849, 852–53 (1982), when discussing cases where an Illinois court implied a private right of

15

action. However, the *Eul* court dismissed that reference because it involved an entirely different statute and was decided before *Datacom* and after the ICAA was amended to expressly provide a private right of action in a different section of the statute. *Eul*, 2017 WL 1178537, at *19.

Based on these factors, the *Eul* court determined that, if the Illinois Supreme Court were to confront the issue, it would not find in favor of a private right of action and therefore *Sherman* should be disregarded. This conclusion has since been followed by several courts in this District. *E.g.*, *Johnson v. Alltran Educ., LP*, No. 17 CV 6616, 2018 WL 2096374 (N.D. Ill. May 7, 2018); *Keys v. Collection Prof'ls, Inc.*, No. 16 C 8452, 2018 WL 1469006 (N.D. Ill. Mar. 26, 2018); *Skinner v. LVNV Funding, LLC*, No. 16 C 7089, 2018 WL 319320 (N.D. Ill. Jan 8, 2018); *see also Galvan v. NCO Fin. Sys., Inc.*, Nos. 11 C 3918, 11 C 4651, 2016 WL 792009 (N.D. Ill. Mar. 1, 2016). This Court finds the analysis in *Eul* persuasive and adopts it here. Consequently, because Section 9 of the ICAA does not provide a private right of action, Caliber's motion for summary judgment on those claims is granted.

## V. Emotional Distress Damages

Caliber also moves for summary judgment with respect to Plaintiffs' request for emotional distress damages—*i.e.*, the only actual damages Plaintiffs seek in this action. According to Caliber, summary judgment is warranted because Plaintiffs have failed to adduce sufficient evidence supporting their claims of emotional distress.

The Seventh Circuit "maintain[s] a strict standard for a finding of emotional damage because they are so easy to manufacture." *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 609 (7th Cir. 2005) (internal quotation marks omitted). When emotional distress is supported only by the injured party's own testimony, his or her injuries must be explained in reasonable detail and cannot consist of merely conclusory statements. *Id.* Less detailed evidence only suffices

when the misconduct is "so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress" from the actions. *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003).

Plaintiffs here support their emotional distress claims with only their own deposition testimony and what appears to be a form affidavit listing indications of emotional distress on which Plaintiffs circled "YES" or "NO" to indicate that Caliber caused them to experience each listed form of distress. Among the symptoms Plaintiffs state that Caliber's actions have caused them are sleeplessness, depression, panic attacks, weight loss, feelings of nervousness and embarrassment, and a fear of police showing up at their door. These constitute the type of bare allegations that courts in this Circuit routinely have rejected as insufficient when the defendants' acts were not sufficiently egregious. *E.g.*, *Denius*, 330 F.3d at 929 (finding that a plaintiff's testimony that defendant's actions caused him to feel "concerned," "troubled," and "embarrassed and humiliated" did not suffice to establish emotional distress damages); *Koncor v. Esser, James & Assocs., LLC*, No. 16 C 5574, 2016 WL 6822666, at *2 (N.D. Ill. Nov. 18, 2016) (stating that general references to "humiliation, anger, anxiety, emotional distress, fear, frustration, and embarrassment" were too conclusory to support actual damages). Plaintiffs' affidavit is wholly conclusory, and their testimony is not much better. When asked about the severity of certain symptoms, neither Consuelo nor Antonio could provide specifics. *See Thompson v. Gateway Fin. Servs., Inc.*, No. 10 C 7658, 2012 WL 5989240, at *4 (N.D. Ill. Nov. 29, 2012) (finding testimony that failed to "elaborate on the type, severity, or frequency of [the plaintiffs'] anguish" to be insufficiently detailed to support emotional distress damages). Moreover, Consuelo testified that her children observed her distress and she complained to her doctor about stress and headaches.

Yet she has failed to offer affidavits or other testimony from any of her children or a doctor to support those claims.

Because Plaintiffs' evidence of emotional distress damages is conclusory and threadbare, the Court must examine whether Caliber's actions were so inherently degrading that emotional distress may be inferred. The Court easily finds that they were not. Caliber's acts included mailing several letters that all contained truthful information that nonetheless might have been drafted in a confusing manner. In addition, Caliber made several phone calls to Plaintiffs, but no Caliber representative demanded payment or engaged in abusive or humiliating behavior on those calls. Thus, the Court cannot infer emotional distress and summary judgment must be granted in favor of Caliber with respect to Plaintiffs' request for emotional distress damages.

## CONCLUSION

For the foregoing reasons, Caliber's motion for partial summary judgment (Dkt. No. 44) is granted in its entirety.

ENTERED:

Dated: October 9, 2018

_____
Andrea R. Wood
United States District Judge

18